PAGES 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARILYN HALL PATEL, JUDGE

TRANS VIDEO ELECTRONICS,      )
LTD, AN INDIANA               )
CORPORATION,                  )
                              )
          PLAINTIFF,          )
                              )
  VS.                         )          NO. C 09-3304 MHP
                              )
SONY CORPORATION OF           )
AMERICA, ET AL.,              )
                              )
          DEFENDANTS.         )
_____)

                         SAN FRANCISCO, CALIFORNIA
                         MONDAY, FEBRUARY 14, 2011

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

FOR PLAINTIFF:          LOCKE LORD BISSELL & LIDDELL LLP
                        3 WORLD FINANCIAL CENTER
                        21ST FLOOR
                        NEW YORK, NY  10281
                   BY:  **JOHN FRANCIS SWEENEY**
                        **ZACHARY D. SILBERSHER**
                        **ATTORNEYS AT LAW**

                        LOCKE LORD BISSELL & LIDDELL
                        44 MONTGOMERY ST.
                        #2400
                        SAN FRANCISCO, CA  94104
                   BY:  **MATTHEW K. BLACKBURN**
                        **ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:            JAMES YEOMANS, CSR #4039, RPR
                        OFFICIAL REPORTER
             COMPUTERIZED TRANSCRIPTION BY ECLIPSE

**APPEARANCES**:   (CONTINUED)

FOR DEFENDANT:                    KENYON & KENYON LLP
                                 1 BROADWAY
                                 NEW YORK, NY  10004
                            BY:  **WALT E. HANLEY**
                                 **ATTORNEY AT LAW**


                                 KENYON & KENYON LLP
                                 333 WEST SAN CARLOS ST.
                                 SUITE 600
                                 SAN JOSE, CA  95110
                            BY:  **MEGAN RAE WHYMAN OLESEK**
                                 **ATTORNEY AT LAW**


MONDAY, FEBRUARY 14, 2011                          2:00 P.M.

          (THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:)

          **THE CLERK:**  CALLING CIVIL 09-3304, TRANS VIDEO

ELECTRONICS VERSUS SONY ELECTRONIC.

          **THE COURT:**  MAY WE HAVE YOUR APPEARANCE.

          **MR. SWEENEY:**  JOHN SWEENEY FROM LOCKE LORD BISSELL &

LIDDELL FOR TRANS VIDEO.  I HAVE WITH ME MY PARTNER MATT

BLACKBURN AND ZACH SILBERSHER AND ALSO PRESENT IS THE PRESIDENT

OF OUR CLIENT TRANS VIDEO INVENTOR OF THE PATENT MOHAMMED

RABECK.

          **MR. RABECK:**  GOOD AFTERNOON, YOUR HONOR -- YOUR

HIGHNESS.

          **THE COURT:**  THANK YOU.

          **MR. RABECK:**  THANK YOU FOR HAVING US.

          **THE COURT:**  WE'LL TRY THAT OUT FROM NOW ON.  THANK

YOU.

JAMES YEOMANS - OFFICIAL REPORTER - (415)863-5179

**MR. HANELY:** GOOD AFTERNOON, YOUR HONOR.

WALT HANLEY FROM KENYON & KENYON FOR THE DEFENDANTS. I HAVE WITH ME MY PARTNER MEGAN OLESEK AND FROM ONE OF THE DEFENDANTS SONY COMPUTER ENTERTAINMENT AMERICA WE HAVE JIM YOUNG WHOSE THE SENIOR COUNSEL.

**THE COURT:** YES, GOOD AFTERNOON.

NOW, EVERYTHING IS WOUND UP IN TERMS OF THE RE-EXAM; IS THAT CORRECT?

**MR. SWEENEY:** ALMOST, YOUR HONOR, THINK -- IN DECEMBER, I THINK.

**THE COURT:** WHO'S GOING TO BE HEARD ON THIS?

**MR. SWEENEY:** WE'RE PLAINTIFF'S COUNSEL.

**THE COURT:** FROM YOUR CONTINGENT WHOSE GOING TO BE HEARD?

**MR. SWEENEY:** ME.

**THE COURT:** AND YOU OVER HERE?

**MR. HANELY:** JUST ME.

**THE COURT:** WHY DON'T YOU COME UP HERE WITH WHATEVER PAPERS YOU HAVE WITH -- IF YOU NEED THEM, SO WE CAN HAVE A CONVERSATION ABOUT THIS.

GO AHEAD, I'M SORRY TO INTERRUPT.

**MR. SWEENEY:** DECEMBER 14TH THE PATENT OFFICE ISSUED A LETTER OF INTENT TO ISSUE THE RE-EXAMINATION CERTIFICATE CONFIRMING THE PATENTABILITY OF QUITE A FEW OF THE CLAIMS, INCLUDING THE ONE CLAIM THAT WE'VE ASSERTED HERE CLAIM 3.

**THE COURT:**  DO WE HAVE ONLY ONE CLAIM?

**MR. SWEENEY:**  ONE CLAIM WE ASSERTED, THE PATENTABILITY CONFIRMED IT OVER THE PRIOR ART WAS SUBMITTED BY SONY.  THE ACTUAL CERTIFICATE OF RE-EXAMINATION HASN'T ISSUED YET, IT SHOULD ISSUE EMINENTLY, BUT THE DECISION HAS BEEN MADE.

SO AT THIS STAGE WE BELIEVE WE STAYED THIS CASE TO SEE WHAT THE PATENT OFFICE WOULD DO.  WE THINK THAT'S COMPLETED NOW.  THE CLAIM ISN'T GOING TO CHANGE, THERE WAS NO CHANGE TO THE CLAIM DURING THE RE-EXAMINATION PROCEEDING IDENTICAL TO WHAT IT WAS ORIGINALLY.

SO WE THINK THE STAY SHOULD BE LIFTED.  WE SHOULD PROCEED ALONG WITH THE DISCOVERY.  WE BEGAN DISCOVERY BEFORE THE STAY, WE SERVED SOME INTERROGATORIES AND DOCUMENT REQUESTS, SONY OBJECTED ON THE GROUND A STAY WAS LIKELY, THE STAY DID HAPPEN.  SO WE WOULD LOOK FOR ANSWERS TO THOSE INTERROGATORIES AND PRODUCTION OF THOSE DOCUMENTS.

AS WE SUBMITTED THIS CASE MANAGEMENT STATEMENT PROPOSED SCHEDULE CULMINATING WITH THE TRIAL IN AUGUST 2012. WE TRIED TO USE THE SAME TYPE OF PHASING THAT WAS IN YOUR ORIGINAL CASE MANAGEMENT ORDER BACK IN DECEMBER OF 2009.

AS I UNDERSTAND IT, SONY IS SUGGESTING SOME VERY LIMITED SELECTIVE CHERRY PICKED DISCOVERY, SO THEY CAN MAKE A QUICK SUMMARY JUDGMENT MOTION TO END THIS CASE.

WE VIGOROUSLY OPPOSE THAT.  WE'VE BEEN WAITING FOR DISCOVERY FOR A LONG TIME.  WE THINK WE'RE ENTITLED TO

DISCOVERY.

ONCE DISCOVERY IS MADE PEOPLE CAN MAKE MOTIONS FOR SUMMARY JUDGMENT.  WE MAY MAKE SOME OURSELVES, I THINK, THAT'S FINE, BUT I DON'T THINK IT'S FAIR TO BASICALLY SAY WE'RE NOT GOING TO GETS ANY DISCOVERY, WE HAVE TO DEFEND AGAINST THESE CASE DISPOSITIVE MOTIONS SO EARLY IN THE DISCOVERY PERIOD.

SO -- AND WE'RE NOT WEDDED TO THIS PARTICULAR SCHEDULE.

**THE COURT:**  YOU ARE EXCEPT FOR THIS MOTION ISSUE, YOU ARE HOWEVER AGREEABLE TO THE SCHEDULE; IS THAT CORRECT?

**MR. HANELY:**  WELL, APART FROM -- THEIR SCHEDULE IS ACCEPTABLE APART FROM ONE ITEM THAT WE WOULD ADD TO IT AND DOES RELATE TO THE PATENT OFFICE'S ACTIVITY.

THE PATENT OFFICE ESSENTIALLY CONFIRMED THE PATENTABILITY OF CLAIM 3 BASED ON FAIRLY NARROW READING OF TWO LIMITATIONS IN CLAIM 3, AND IN THAT SENSE, ALTHOUGH THE LANGUAGE OF THE CLAIM DIDN'T CHANGE, THE SCOPE OF IT DID CHANGE.

SO WE WOULD, AT LEAST, WANT TO INCLUDE IN OUR JOINT CASE MANAGEMENT STATEMENT THOSE CONSTRUCTIONS THAT THE PATENT OFFICE ADOPTED IN ALLOWING CLAIM 3.

**THE COURT:**  WELL, IS THAT GOING TO GO TO THE CLAIM CONSTRUCTION IN TERMS OF, YOU KNOW, CONSTRUING PARTICULAR TERMS IN THE PATENT?

**MR. SWEENEY:**  I WOULD THINK THAT SHOULD GO.  THAT WAS

PART OF THE MARKMAN BRIEFING, NOT REALLY PART OF THE SCHEDULE.

I THINK WE CAN CERTAINLY -- SONY IS FREE TO PRESENT THAT VIEW AND WE'LL PRESENT OUR VIEW IN THE MARKMAN CONSTRUCTION.

AND, IN FACT, ONE THE FIRST THINGS ON THE SCHEDULE IS THE OPENING CLAIM CONSTRUCTION BRIEF AND, I THINK WE'RE PROPOSING A MARKMAN HEARING IN THAT IN MAY, COULD BE LATER OR EARLIER WE'RE NOT WEDDED TO THAT SCHEDULE, BUT WE'RE NOT, I DON'T THINK, YOU KNOW, A MARKMAN DECISION SHOULD BE MADE TODAY AS PART OF A SCHEDULE.

THE MARKMAN HEARING WILL RESOLVE THE CLAIM CONSTRUCTION AND WHAT THE PATENT OFFICE DID MAYBE RELEVANT AND THAT CAN BE PART OF THE MARKMAN PRESENTATION.

**THE COURT:** THAT IS PART OF THE MARKMAN PROCESS AND BECAUSE IT IS, YOU KNOW, THE PROSECUTION HISTORY.

**MR. HANELY:** IT'S MORE THAN RELEVANT, YOUR HONOR. BASICALLY, THE PATENT EXAMINER ON THE CLAIMED PATENT OF THE BASIS OF TWO LIMITATIONS IN THE CLAIM. THEY DIDN'T DISPUTE WHAT THE PATENT EXAMINER SAID AND ESSENTIALLY THEY BOUGHT INTO WHAT HE SAID.

OTHERWISE, IF THEY HAD DISPUTED THE PATENT EXAMINER WOULD HAVE HAD THE CHANCE TO SAY, ALL RIGHT, IF YOU SAY IT MEANS SOMETHING DIFFERENT.

**THE COURT:** THIS IS THE TIME TO DO THAT IN THE CLAIM CONSTRUCTION.

**MR. HANELY:**  CORRECT.

**THE COURT:**  OKAY.

**MR. SWEENEY:**  THAT'S ALL I'M SAYING.

**THE COURT:**  SEEMS TO ME THAT THE PROCESS OF CLAIM CONSTRUCTION SHOULD GO FORWARD.

NOW, AND THE THIRD CLAIM IS A -- ARE INTERESTINGLY LENGTHY CLAIM, I SEEM TO RECALL, ALTHOUGH, I DIDN'T GO BACK AND TAKE A LOOK, YOU HAD ACTUALLY PROPOSED SOME TERMS THAT WOULD NEED TO BE CONSTRUED?

**MR. SWEENEY:**  YES, WE DID EXCHANGE CERTAIN TERMS.  I THINK, I FORGET THE NUMBER, 6 OR TEN OR SOMETHING LIKE.

**MR. HANELY:**  20.

**MR. SWEENEY:**  AND WE ACTUALLY EXCHANGED --

**THE COURT:**  I TOLD YOU TO KEEP IT DOWN TO 10.

**MR. SWEENEY:**  RIGHT.  AND WE EXCHANGED SOME.

**THE COURT:**  HAVEN'T CHANGED?

**MR. SWEENEY:**  WE DID EXCHANGE OUR PROPOSED CONSTRUCTIONS, SO THE -- WE WERE UP TO THE POINT WHEN YOU STAYED THE CASE TO DO THE OPENING MARKMAN BRIEF, I THINK, ON OUR SIDE.

**THE COURT:**  AND IS THERE OTHER DISCOVERY THAT YOU WOULD NEED TO DO NOW IN CONNECTION WITH THE MARKMAN, ESSENTIALLY RELATED TO THE --

**MR. SWEENEY:**  WE THINK WE SHOULD GO AHEAD WITH FULL DISCOVERY, CLAIM CONSTRUCTION, NOT THE ONLY ISSUE IN THE CASE.

NOW, BEFORE YOU STAYED THE CASE DISCOVERY WAS LIMITED. WHEN THE PROSPECT OF A STAY BECAME APPARENT, I THINK, IN MARCH OF THE YEAR BEFORE YOU STAYED THE CASE, YOU DID LIMIT DISCOVERY TO THINGS RELATING TO THE MARKMAN.  I THINK, THAT LIMITED DISCOVERY THE TIME ACTUALLY EXPIRED FOR THAT IN MAY OF LAST YEAR.

I THINK, AS I RECALL, MR. HANLEY INITIALLY PROPOSED TO HAVE AN EXPERT TESTIFY AT THE MARKMAN HEARING.  WE SAID WE WANTED HIS DEPOSITION, THEY DIDN'T WANT TO GIVE IT TO US.

THEY DECIDED, WELL, THEY'RE GOING TO GO WITHOUT AN EXPERT AT THE MARKMAN HEARING.  SO THE DISCOVERY, I BELIEVE, FOR THE MARKMAN CONSTRUCTION IS OVER WITH LAST YEAR.

**THE COURT:**  EXCEPT TO THE EXTENT THAT ANYTHING HAPPENED ON THE RE-EXAM.

**MR. SWEENEY:**  THAT'S CORRECT.

**THE COURT:**  THAT REQUIRES THAT YOU REVISIT ANY OF THAT.

**MR. SWEENEY:**  THAT'S CORRECT.  BUT WE DON'T WANT TO JUST LIMIT IT TO THAT NOW, WE THINK WE'RE ENTITLED TO DISCOVERY.

IN THE TYPICAL CASE YOU WERE ABLE TO HAVE DISCOVERY ONCE YOU HAVE THE CASE MANAGEMENT CONFERENCE.  WE'RE WILLING TO YIELD DISCOVERY, WE HAVE SERVED DOCUMENT REQUESTS OVER A YEAR AGO, WE HAVEN'T GOTTEN A SINGLE DOCUMENT.

SO THAT'S WHAT WE WOULD LIKE AND THE SCHEDULE

CONTEMPLATES AFTER TODAY WE CAN GO FORWARD WITH THE NORMAL DISCOVERY IN A PATENT CASE.

**MR. HANELY:**  MAY I BE HEARD ON OUR PROPOSAL, YOUR HONOR?

**THE COURT:**  WHICH IS THIS MOTION?

**MR. HANELY:**  WHICH IS RELATED TO THE MOTION AND IT ARISES FROM VERY RESENT EVENTS IN DECEMBER, IN FACT.

I THINK, DECEMBER 20TH THE FEDERAL CIRCUIT ISSUED A VERY KEY DECISION ON THE ISSUE OF JOINT INFRINGEMENT COULD CALLED AKAMAI VERSUS LIMELIGHT AND IMMEDIATELY WE RECOGNIZED, AND I'M CERTAIN THAT MR. SWEENEY AND HIS CREW RECOGNIZED, THAT IT HAD A SUBSTANTIAL IMPACT ON THIS CASE.

UP UNTIL THAT TIME THE PRIMARY THEORY, AS WE UNDERSTOOD IT, FOR THEIR CONTENDING THERE WAS INFRINGEMENT WAS THAT THERE WAS ACTIVITY BY SONY, BUT ALSO SINCE SONY WAS USING THESE CONTENT DELIVERY NETWORKS TO DO ITS VIDEO DISTRIBUTION THEIR ACTIVITY WAS ALSO RELEVANT.  AND, IN FACT, IN THEIR INFRINGEMENT CONTEXTS WE POINTED THAT OUT.

SO WE SAW THIS NATURALLY AS A JOINT INFRINGEMENT CASE. AS YOU KNOW WE DON'T DO THE VIDEO DISTRIBUTION OURSELVES AND WE HAVE THESE THIRD-PARTIES DO IT FOR US.

SO AKAMAI DECISION CAME DOWN AND PUT FAIRLY SEVERE STRICTURES ON WHEN YOU CAN SHOW THAT ACCUSED INFRINGER VICARIOUS LIABLE FOR THE ACT OF A THIRD-PARTY.  BASICALLY YOU HAVE TO SHOW --

**THE COURT:** THERE WAS A METHOD PATENT, CORRECT?

**MR. HANELY:** A METHOD PATENT. SINCE THEN ANOTHER DECISION CAME OUT CALLED CENTILLION VERSUS QWEST AND IN THE CONTEXT OF A SYSTEM CLAIM LIKE SYSTEM CLAIM HERE THEY FOUND THE SAME SORT OF VICARIOUS LIABILITY STANDARD APPLIED.

SO WE HAVE NOW WHAT WE THINK IS A VERY UNLIKELY EFFORT BY THEM TO PROVE VICARIOUSLY LIABILITY UNDER THE AKAMAI STANDARD AND NOW THEY'RE RESORTING TO SORT OF ALTERNATIVE THEORIES THAT RELATE TO INDUCEMENT OF INFRINGEMENT BY OUR CUSTOMERS.

AND SO ON THE FACTS THAT WE THINK CAN'T BE LEGITIMATELY DISPUTED WE THINK THEY WON'T PREVAIL ON THAT EITHER. SO ITS AN OPPORTUNITY, YOUR HONOR, TO FOCUS THE CASE ON THIS ISSUE. WE'RE PREPARED TO GO FORWARD WITH DISCOVERY ON THAT.

IT'S NOT LIKE IT'S CHERRY PICKED DISCOVERY, RELATES TO BASICALLY THE ACTIVITIES OF THE DEFENDANTS AS THEY BEAR ON WHETHER THERE'S ACTS OF INFRINGEMENT, AND PRESUMABLY THEY'LL WANT TO TAKE THE DISCOVERY OF THESE CONTENT DELIVERY NETWORKS AS WELL.

SO IT'S A MAJOR ISSUE IN THE CASE. IT'S AN ISSUE WE SUBMIT AFTER THE MOTION IS SUBMITTED TO YOUR HONOR, YOUR HONOR WILL AGREE WITH US, AND AVOIDS THIS SORT OF BROAD BASE DISCOVERY EFFORT ON THEIR PART WHICH IS GOING TO BE EXPENSIVE CERTAINLY FOR SONY.

THIS IS ONE OF THOSE CASES WHERE THERE'S GROSS ASYMMETRY IN DISCOVERY OBLIGATIONS.  THEY HAVE A SMALL COMPANY, THEY PROBABLY HAVE A BOX OF DOCUMENTS.  THEIR DOCUMENT REQUESTS BASICALLY ASKS FOR EVERYTHING ABOUT KEY PRODUCT LINES.

**THE COURT:**  SINCE WHEN DOES THE SMALL COMPANY GET TO SORT OF LOSE JUST BY VIRTUE OF THE OTHER COMPANY BEING SO BIG IT WOULD TAKE TOO LONG TO GET ALL DOCUMENTS TOGETHER?

**MR. HANELY:**  IT'S NOT BY VIRTUE OF THAT, IT'S BY VIRTUE OF AN ISSUE THAT WE THINK THE CASE CAN BE RESOLVED ON.

**THE COURT:**  FIRST OF ALL, I THINK IT'S A BIG MISTAKE FOR ANYBODY TO TRY TO ENTERTAIN A MOTION WITH RESPECT TO INFRINGEMENT OR NON-INFRINGEMENT WITHOUT CLAIM CONSTRUCTION.

I HAD PEOPLE ARGUE THAT BEFORE AND I SEE THE MOTION AND IT COMES IN AND, YOU KNOW, YOU DON'T AGREE ON THESE TERMS AND WHAT THEY MEAN.

**MR. HANELY:**  YOUR HONOR, THIS MOTION I WOULD AGREE WHOLE HEARTLY WITH YOUR HONOR, IF THE MOTION IS DIRECTED DOES THIS CLAIM LIMITATION READ ON THIS DEVICE THAT REQUIRES A CLAIM CONSTRUCTION ACTIVITY BY OUR -- THIS IS NOT THAT, THIS IS -- LET'S ASSUME THAT YOU READ ON THESE CONTENT DISTRIBUTION NETWORKS, THERE'S NO ACT OF INFRINGEMENT BY OUR CLIENT. THERE'S NO LIABILITY BECAUSE NO VICARIOUS LIABILITY.

**THE COURT:**  LET ME ASK YOU, FIRST OF ALL, IS THERE ANY -- WELL, CLAIM 3 IS NOT A METHOD CLAIM.

**MR. SWEENEY:**  CORRECT.  A SYSTEM CLAIM, CORRECT.

**THE COURT:** AND CAN YOU JUST EXPLAIN BRIEFLY WHAT IT IS THAT THIS DOES AND WHAT IT IS THAT SONY DOES THAT INFRINGES?

**MR. SWEENEY:** YES, SONY SELLS THE PLAYSTATION 3 PRODUCT.

**THE COURT:** YES, I THINK, I PROBABLY HAVE A COUPLE OF THEM.

**MR. SWEENEY:** WITH IT COMES THE NETWORK ACCESS TO GAMES, MOVIES, TO DOWNLOAD AND UPLOAD THEM.  SO THEY SELL THE SYSTEM, THEY SELL THE BOX AND WITH IT COMES ACCESS TO THE PLAYSTATION NETWORK.

**THE COURT:** THEY MAKE IT AND THEY SELL IT?

**MR. SWEENEY:** THEY MAKE IT AND SELL IT.  AKAMAI DELIVERS THINGS TO THEM, WE'RE ACCUSING THEM OF INFRINGEMENT, OF INFRINGEMENT AS A RESULT OF SALE.

THE CENTILLION CASE A USER WHO USES SUCH A SYSTEM INFRINGES EVEN THOUGH HE DOESN'T HAVE ALL THE SERVERS AND AMPLIFIERS AND THINGS LIKE THAT IN HIS LIVING ROOM, HE HAS ACCESS TO THEM.

HOW DID THE USER GET THE PLAYSTATION 3 NETWORK AND THE ACCESS TO THE NETWORK?

SONY SOLD IT TO THEM.

SO AKAMAI HAS NO APPLICABILITY TO THIS CASE. CENTILLION CASE ACTUALLY VERY CONSISTENT WITH OUR THEORY AND, YOU KNOW, WE CLEARLY HAVE PLEADED INFRINGEMENT, WE'RE ENTITLED TO DISCOVERY AND CLAIM CONSTRUCTION.

YOU'RE RIGHT, YOUR HONOR, IT'S NOT JUST A QUESTION OF INFRINGEMENT.  WHEN WE GET INTO CLAIM CONSTRUCTION YOU FIGURE WE -- LIKE IN THE CENTILLION AKAMAI CASES ONE PARTY SAYS I DON'T DO ALL THE ELEMENTS.

TO FIGURE OUT WHO DOES ALL THE ELEMENTS YOU HAVE TO KNOW WHAT ELEMENTS MEAN.  YOU HAVE TO HAVE A CONSTRUCTION FOR SURE.

WE WERE HERE A YEAR AND A HALF AGO AND MR. HANLEY AND SONY WERE TELLING US THAT THIS PATENT WAS PROBABLY INVALID, THE PATENT OFFICE PROBABLY GOING TO KILL THIS PATENT AND THEREFORE NO DISCOVERY.

WE'VE GONE THROUGH THAT PROCESS NOW, THE PATENT HAS BEEN UPHELD BY THE PATENT OFFICE AS VALID AS THEY SEE IT, AND I DON'T THINK WE CAN KEEP COMING IN HERE AND DERAILING THIS CASE BECAUSE IT GIVES SONY A TACTICAL ADVANTAGE.  WE HAVE A RIGHT TO DISCOVERY.

**THE COURT:**  LET ME ASK YOU THIS:  IF YOU PRACTICE CLAIM 3 WHAT ARE YOU DOING EXACTLY?

**MR. SWEENEY:**  YOUR --

**THE COURT:**  TAKE IT OUT OF THE CONTEXT OF PLAYSTATION, ET CETERA.

**MR. SWEENEY:**  IF YOU USE THE CLAIM YOU TURN THE PLAYSTATION 3 DEVICE ON THE USER WHO DOES IT.  HE USES THE SYSTEM BY DOWNLOADING A GAME, OR DOWNLOADING A VIDEO, OR UPLOADING A GAME THAT HE PLAYS, AND THE TERMINAL IS CONNECTED

TO A NETWORK WHICH SONY ADVERTISES AS THE PLAYSTATION NETWORK.

NOW, IT'S NOT THE CUSTOMER WHOSE SUING HERE IT'S SONY. SONY SELLS THAT SYSTEM.  THE PATENT GIVES YOU THE PATENTEE THE EXCLUSIVE RIGHT TO MAKE, USE AND SELL -- AND THE SELLING OF PRODUCT OR A SYSTEM WITHIN THE CLAIM IS AN ACT OF INFRINGEMENT.

**THE COURT:**  IS THERE ANY COMPANY THAT PRACTICES THIS CLAIM 3 NOW?

**MR. SWEENEY:**  BESIDES SONY?

**THE COURT:**  YES.

**MR. SWEENEY:**  I THINK, THERE ARE.  WE HAVEN'T BROUGHT ACTIONS AGAINST THEM.

**THE COURT:**  IS THE PLAINTIFF PRACTICING?

**MR. SWEENEY:**  WHAT THE PLAINTIFF DEVELOPED IN THE EARLY 90'S IN THE CONTEXT OF THE GULF WAR, WERE TERMINALS WERE SET UP FOR JOURNALISTS TO UPLOAD AND DOWNLOAD VIDEOS TAKEN DURING THE GULF WAR, AND IT WAS PRACTICED PROTOTYPES WERE BUILT DURING THAT TIME.  RIGHT NOW TRANS VIDEO IS NOT PRACTICING THIS CLAIM.

**THE COURT:**  BUT THIS IS A SYSTEM THAT ESSENTIALLY DEVELOPED THE VARIOUS COMPONENTS THAT MAKE UP THE NETWORK, RIGHT?

**MR. SWEENEY:**  YES.

**THE COURT:**  IN OTHER WORDS, IT'S NOT THE CONTENT?

**MR. SWEENEY:**  NO, IT'S --

**THE COURT:**  IT'S THE MEANS OF DELIVERING THE CONTENT?

**MR. SWEENEY:**  THE SYSTEM REQUIRES STORAGE, STORAGE OF VIDEO.  IT REQUIRES CONNECTIONS TO DOWNLOAD THOSE VIDEOS TO A USER TERMINAL, REQUIRES A MENU THAT DISPLAYS TO THE USERS WHAT'S AVAILABLE, IT REQUIRES HIM TO BE, THE USER TO BE ABLE TO UPLOAD VIDEOS BACK TO THE CENTRAL SERVERS.

**THE COURT:**  BUT IT'S NOT THE CONTENT?

**MR. SWEENEY:**  IT'S NOT THE CONTENT.

**THE COURT:**  IT'S THE HARDWARE?

**MR. SWEENEY:**  THE SYSTEM, YES.

**THE COURT:**  SOME SOFTWARE THAT ACCOMPLISHES THE LOADING, DOWNLOADING?

**MR. SWEENEY:**  THE SUBSTANTIAL AMOUNT IN THE USER'S HOME THAT'S THE BOX.  THE SONY PLAYSTATION 3 SONY SELLS, WHEN THIS USER GETS IT HOME AND PLUGS IT IN HE AUTOMATICALLY GETS ACCESS TO THE SONY NETWORK TO THE SERVERS, THE STORAGE, ET CETERA.

SO JUST AS THE CENTILLION CASE HOLDS THE USER USES THAT SYSTEM HE INFRINGES, THE PERSON WHO SOLD THAT TO HIM, ASSUMING IT'S WITHIN THE CLAIMS INFRINGES AS WELL.  THAT'S WHAT WE'RE ALLEGING HERE.

**MR. HANELY:**  NOW, MR. SWEENEY -- NOW THE ISSUE EVEN NARROWER AND MORE APPROPRIATE FOR EARLY SUMMARY JUDGMENT THAN EVEN HOW WE PRESENTED IN THE CASE MANAGEMENT STATEMENT.

BASICALLY, HE'S SAYING THIS IS NOT A JOINT INFRINGEMENT CASE, SONY INFRINGING BY VIRTUE OF TWO THINGS.

ONE, THEY SUPPOSEDLY SELL THE SYSTEM BY SELLING PLAYSTATION 3 OR, TWO, THEIR USERS USE THE SYSTEM AND SOMEHOW SONY'S LIABLE ON AN INDUCEMENT OR CONTRIBUTORY INFRINGEMENT THEORY ON THIS POINT OF SELLING THE SYSTEM.

PLAYSTATION 3 IS A GAME, ENTERTAINMENT DEVICE THAT USERS USE IN MANY WAYS HAVING NOTHING TO DO WITH DOWNLOADING VIDEOS.

THE CLAIM IS DIRECTED TO AN INFORMATION DISTRIBUTION SYSTEM THAT INCLUDES STORAGE AND A BUNCH OF INTER-CONNECTING HARDWARE PIECES THAT CONNECT TO A NETWORK TO SEND THE VIDEO TO WHAT'S CALLED A RECEIVING STATION.

**THE COURT:** BUT IN ORDER TO DETERMINE WHETHER OR NOT SONY INFRINGES ONE WOULD HAVE TO LOOK AT HOW THAT BOX OPERATES, RIGHT?

**MR. SWEENEY:** BUT THE KEY POINT, AND I CAN'T EMPHASIZE THIS ENOUGH, WHEN THEY SAY WE SELL THE SYSTEM, THE SYSTEM IS, ACCORDING TO THEIR INFRINGEMENT CONTENTIONS, IT'S A BUNCH OF TELECOMMUNICATIONS HARDWARE AND STORAGE DEVICES THAT ARE AT SOME REMOTE LOCATION. HERE THE ONLY DEVICE --

**THE COURT:** THAT'S PART OF THE NETWORK, RIGHT?

**MR. HANELY:** THAT'S PART OF THE INFORMATION DISTRIBUTION SYSTEM. SO ALL OF THAT STUFF SONY DOESN'T SELL THAT. SONY ISN'T IN THE BUSINESS OF SELLING TELECOMMUNICATIONS HARDWARE. DOESN'T SELL A DISTRIBUTION SYSTEM, IT SELLS A PRODUCT LIKE A COMPUTER THAT ONE CAN USE TO CONNECT TO THE

INTERNET AND GET INFORMATION.

**MR. SWEENEY:**  IF YOU SELL -- SONY SELLS THE SYSTEM THE PLAYSTATION 3 THAT USER IS CONNECTED BY VIRTUE OF THAT SALE TO THE NETWORK, SO IT'S NOT JUST SELLING A BOX IT'S SELLING ACCESS.

**THE COURT:**  OKAY.

**MR. HANELY:**  THE THEORY IS CHANGING NOW, HE'S NOT SAYING SONY A DIRECT INFRINGER BY SELLING THIS TELECOMMUNICATIONS HARDWARE, THEY'RE SAYING THE USER BUYS THE COMPONENT.

**THE COURT:**  YOU KNOW WHAT, OKAY, WE'RE GOING TO GO AHEAD WITH CLAIM CONSTRUCTION BECAUSE I'M NOT TAKING A CHANCE. I DON'T CARE WHAT YOU SAY ABOUT IT I'VE BEEN DOWN THAT ROAD BEFORE, THERE ARE NO TERMS AND IT'S JUST A DIVERSION.  WE REALLY GOT TO GET THIS CASE ON THE ROAD AND MOVING.

SO WE'RE GOING TO DO, FIRST OF ALL, I AM GOING TO ADOPT THE SCHEDULE THAT'S PROPOSED HERE.  SEEMS LIKE A PERFECTLY REASONABLE SCHEDULE TO GET TO CLAIM CONSTRUCTION AND IT'S ONLY ONE CLAIM.

SO I'M ASSUMING THAT EVEN THOUGH IT'S A LENGTHY ONE THAT THERE SHOULDN'T BE MORE THAN 10 TERMS THAT NEED TO BE CONSTRUED, RIGHT?

**MR. SWEENEY:**  I THINK THAT'S RIGHT.

**MR. HANELY:**  THERE ARE, YOUR HONOR, IF I CAN, IF I REMEMBER WHAT YOUR HONOR SAID ABOUT THE NUMBER OF 10, IT WAS 10

CLAIMS, BUT IN ANY EVENT.

**THE COURT:**  NO, 10 TERMS.

**MR. HANELY:**  WE'VE SUBMITTED OUR STATEMENT WE IDENTIFIED THE 10 TERMS THAT ARE THE MOST IMPORTANT.

**THE COURT:**  YOU WORK THAT OUT.  I DON'T CARE WHICH TERMS THEY ARE, YOU PICK THEM, BUT I'M ONLY GOING TO CONSTRUE 10.  IF I NEED TO CONSTRUE MORE THAN THAT I'LL FIGURE IT OUT LATER ON.

IF YOU INSIST ON GOING FORWARD WITH THAT MOTION WE'LL SET A DATE FOR YOU TO FILE THE MOTION.  AND THE ONLY THING I WILL ASK IN RESPONSE IS THAT RATHER THAN OPPOSING THE MOTION YOU EXPLAIN TO ME WHY IT WOULD BE INAPPROPRIATE TO HEAR IT AT THAT STAGE BEFORE CLAIM CONSTRUCTION HAS BEEN DETERMINED. OKAY.

**MR. SWEENEY:**  YES, THAT'S FINE.  MAY WE MOVE FORWARD WITH OUR DISCOVERY, TOO?

**THE COURT:**  YES.  WE NEED TO GO -- NO DAMAGE DISCOVERY AT THIS POINT BUT ANY --

**MR. SWEENEY:**  DISCOVERY ON THE OPERATION OF THE NETWORK AND THE DEVICES?

**THE COURT:**  SURE.

**MR. SWEENEY:**  WHEN I GIVE AN EXAMPLE LIKE I DID IN THE CASE MANAGEMENT STATEMENT OF THE INFRINGEMENT, HERE I DON'T LIKE IT WHEN ADVERSE COUNSEL THEN SAYS, OKAY, THAT'S MY ONLY THEORY, I'M PRECLUDED.

AS SOON AS I SAY A WALT SENDS ME A STIPULATION THAT I HAVE TO DISAVOW EVERY OTHER POSSIBILITY.  THIS IS A SCHEDULING CONFERENCE AND I DON'T WANT TO BE FORCED INTO STIPULATION UNTIL I HAVE SOME DISCOVERY HERE.

THE COURT:  HE NEEDS TO KNOW HOW THINGS OPERATE.

MR. HANELY:  I WAS REACTING TO HIS STATEMENT THIS IS NOT A JOINT INFRINGEMENT CASE, IF NOT THAT SIMPLIFIES THE RULE.

THE COURT:  WE'RE NOT GOING TO DANCE AROUND THAT. WE'LL FIND OUT WHAT IT REALLY IS AFTER THE CLAIM CONSTRUCTION AND THE CASE MANAGEMENT CONFERENCE AT THIS TIME WHEN THAT'S FINISHED.

BUT IN THE MEANTIME EXCEPT FOR DAMAGE DISCOVERY YOU SHOULD GO FORWARD WITH LIABILITY DISCOVERY AND GET -- AND THIS CASE NEEDS TO MOVE FORWARD NOW.

MR. SWEENEY:  THANK YOU.

THE COURT:  IT'S BEEN ON HOLD FOR TOO LONG.  WE'LL ADD HERE, THOUGH, THIS CLAIM CONSTRUCTION SCHEDULE AND THE HEARING WILL BE SET, THE TUTORIAL WE'LL DO THE SAME DATE MAY 3RD.  WHAT DAY OF THE WEEK IS THAT?

THE CLERK:  THAT IS A TUESDAY.

THE COURT:  WHAT IS ALL OF THAT?  THAT THE START DATE?

THE CLERK:  YES.

THE COURT:  WILL IT HAVE BEEN IN SESSION?

THE CLERK:  THAT'S THE FIRST DAY WILL BE JURY SELECTION.

**THE COURT:**  TAKE A LOOK AT MAY, GET A COUPLE OF DAYS INTO THE TRIAL.

**THE CLERK:**  NOTHING IN THE AFTERNOON.

**THE COURT:**  OKAY.  CAN WE DO IT, TRY FOR MAY 5TH BECAUSE WE'RE STARTING A JURY TRIAL IN A BIG CASE ON THE 3RD. AND MAY 5TH THEN AT 2:30.

**MR. SWEENEY:**  VERY GOOD.

**THE COURT:**  AND THEN WHEN DO YOU INTEND TO FILE THIS MOTION?  THAT I MAY OR MAY NOT HEAR.

**MR. HANELY:**  WE INTENDED TO FILE, YOUR HONOR WILL ENTERTAIN IT, SET TWO WEEKS FROM TODAY.

**THE COURT:**  YOU'RE GOING FILE IT TWO WEEKS FROM TODAY?

**MR. HANELY:**  YES.

**MR. SWEENEY:**  I DON'T HAVE ONE SHRED OF DISCOVERY, I HAVE TO DEFEND A SUMMARY JUDGMENT MOTION TWO WEEKS FROM TODAY, THAT IS COMPLETELY NOT FAIR.

**THE COURT:**  YOUR HOLD ON.  JUST A MINUTE.  I'M GOING TO BALANCE IT OUT HERE.  OKAY.  WE DON'T WANT TO BE UNFAIR.

WHAT I'M GOING TO DO, IS YOU GET IT FILED IN TWO WEEKS, I WILL GIVE YOU TWO WEEKS TO RESPOND IN THE FOLLOWING FASHION.

IT'S NOT AN OPPOSITION, IT'S SORT OF A PRELUDE TO AN OPPOSITION, HOW'S THAT?

THAT, FIRST OF ALL, THAT, YOU KNOW, ANSWER THE QUESTIONS WHETHER CLAIM CONSTRUCTION NEEDS TO BE DONE BEFORE

THE MOTION CAN BE ADJUDICATED AND EXPLAIN THAT BRIEFLY.  OKAY.

AND THEN ALSO WHAT DISCOVERY THAT YOU DON'T HAVE YOU NEED BEFORE YOU CAN RESPOND, SORT OF LIKE A 56(F), JUST DO IT IN THE FORM OF A DECLARATION.

MR. SWEENEY:  YES.

THE COURT:  AND THEN TELL ME HOW MUCH TIME YOU NEED IN ORDER TO ACCOMPLISH IT AND IF IT'S CLEAR TO ME FROM READING WHAT YOU HAVE TO SAY THAT WE DON'T NEED TO DO, THAT WE DO NEED TO DO CLAIM CONSTRUCTION, WE'LL PUT IT OVER UNTIL AFTER THAT.

MR. SWEENEY:  VERY GOOD.

THE COURT:  IF IT SEEMS COULD GO FORWARD ON SOME TRACK, THEN TELL ME HOW MUCH TIME YOU NEED TO FILE YOUR OPPOSITION.

MR. SWEENEY:  VERY GOOD.  THANKS.

THE COURT:  THEN WE'LL ISSUE THE SCHEDULE FROM THERE. FAIR ENOUGH?

MR. SWEENEY:  YES, YOUR HONOR.

THE COURT:  OKAY.  WE TRY.  NOT ALWAYS -- THE IDEA NOT TO MAKE EVERYBODY HAPPY, OKAY, JUST GIVE EVERYBODY THE PERCEPTION OF BEING FAIR.  OKAY.  ANYTHING ELSE?

MR. SWEENEY:  I THINK, THAT WILL DO IT FOR TODAY.

THE COURT:  FINE.  THANK YOU.

MR. HANELY:  THANK YOU.

THE COURT:  SO MAY THE 5TH AT 2:30, IF WE DON'T HEAR FROM YOU BEFORE.

**MR. SWEENEY:** GOOD.

**THE COURT:** DISCOVERY DISPUTES, YOU KNOW ABOUT THIS, I DON'T WANT TO HEAR ABOUT THEM.  YOU TRY TO GET THINGS RESOLVED AS BEST YOU CAN.  AND REALLY I HAVE NO PATIENCE FOR SILLY DISCOVERY DISPUTES.

MANY OF THEM ARE SILLY, WE TAKE A LOOK AT THEM, SO YOU TRY TO WORK THINGS OUT AND MAKE A GOOD FAITH EFFORT.  MEET FACE-TO-FACE, CONFERRING -- MEETING FACE-TO-FACE NOT JUST ON THE TELEPHONE.  AND ARE YOU BOTH IN NEW YORK?

**MR. SWEENEY:** UH-HUH.

**THE COURT:** YOU DID MEET FACE-TO-FACE IN NEW YORK?

**MR. SWEENEY:** OKAY.

**THE COURT:** TREAT EACH OTHER WITH RESPECT AND SO FORTH AND TRY TO GET IT DONE AND YOU MAKE EVERY EFFORT TO DO THAT IN GOOD FAITH.  YOU HAVEN'T BEEN ABLE TO REACH A RESOLUTION OF THE DISCOVERY DISPUTE CONTACT MR. BOWSER AND WE'LL HAVE A PHONE CONFERENCE.

**MR. SWEENEY:** VERY GOOD.

**MR. HANELY:** THANK YOU.

**THE COURT:** THANK YOU.

(PROCEEDINGS ADJOURNED.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 17TH DAY OF FEBRUARY, 2011.


/S/  JAMES YEOMANS

_____

JAMES YEOMANS, CSR, RPR