Matthew K. Blackburn (CSB No. 261959)
LOCKE LORD BISSELL & LIDDELL LLP
44 Montgomery St., Suite 2400
San Francisco, CA 94104
Telephone No.: (415) 318-8802
Facsimile No.: (415) 676-5816
*mblackburn@lockelord.com*

*ATTORNEYS FOR PLAINTIFF TRANS VIDEO ELECTRONICS, LTD.*
[Additional Counsel for Plaintiff appear on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRANS VIDEO ELECTRONICS, LTD., an Indiana Corporation, and<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>SONY ELECTRONICS INC., a Delaware Corporation, SONY CORPORATION OF AMERICA, a New York Corporation, SONY COMPUTER ENTERTAINMENT AMERICA INC., a Delaware Corporation, SONY COMPUTER ENTERTAINMENT INC., a Foreign Corporation, and SONY CORPORATION, a Foreign Corporation.<br><br>Defendants/Counterclaim Plaintiff. | Case No. 09 CV 03304 EMC<br><br>**DECLARATION OF RANDY H. KATZ, P.H. D. IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR LACK OF WRITTEN DESCRIPTION** |

NY:1004269/00002:649525v1

Case No. 09 CV 03304 EMC

I, Randy H. Katz, Ph.D. declare as follows:

1.  My qualifications are in the area of Computer Science and Engineering in general, and more specifically in the area of databases, storage, and networks as set forth more fully in my current Curriculum Vitae, attached hereto as Exhibit A.

2.  I have studied, taught, and practiced computer science and engineering for over thirty years. I earned a B.A. degree in Computer Science and Mathematics from Cornell University in May 1976, an M.S. degree and Ph.D. degree in Computer Science from the University of California, Berkeley in June 1978 and June 1980, respectively.

3.  Since 1989 I have been employed as a Full Professor in the Computer Science Division, Electrical Engineering and Computer Sciences Department at the University of California, Berkeley. From 1996 to 1999 I was the Chairman of the Electrical Engineering and Computer Science Department at the University of California, Berkeley.

4.  During the fall semester of 2008 and the fall semester of 2009, I taught a graduate level class at the University of California at Berkeley titled "Computer Networks", which covers among other things telecommunications networking equipment and architecture.

5.  I was asked my opinion by counsel for the Plaintiff Trans Video Electronics, Ltd. with respect to whether certain limitations recited in claim 3 of U.S. Patent No. 5,991,801 ("the '801 patent") were understandable based upon the patent's specification.

6.  The '801 patent's specification discloses that one embodiment of a "master communications unit" is a CSU/DSU (*see e.g.*, col 4:23-24, 59-50; col. 6:36-37). I am familiar with a CSU/DSU.

7. A CSU/DSU is similar to a modem to the extent that, among other things, it can initiate communications between digital equipment to receive and transmit signals. In this way, it can also perform handshaking functions between digital equipment and a digital network in order to receive a synchronous digital signal.

8. A CSU/DSU can receive digital signals that carry information corresponding to a video, such as a movie or television show. To receive such signals, a CSU/DSU can establish communications with a digital network in which information is encoded as a series of ones and zeroes rather than as a continuously varying wave, such as a digital local area network or a digital wide area network. Accordingly, a CSU/DSU can connect with a digital network to retrieve videos stored within that network on video clip storage units, such as a device where information can be recorded or retained for later retrieval and use.

9. In addition, a CSU/DSU can receive information encoded in digital form, which can include signals corresponding to videos without regard to how the subject matter of those videos are stored in each storage unit. Accordingly, it is my understanding that a CSU/DSU can receive signals corresponding to digitally encoded information, which can include videos from a storage unit in a network where the videos are stored on the storage units according to subject matter.

10. A CSU/DSU can typically receive synchronous or asynchronous digital signals. A CSU/DSU can also receive digital signals. Accordingly, a CSU/DSU can receive a synchronous digital signal that carries information corresponding to video data, such as the video data for a movie or television show.

11. My understanding of a CSU/DSU is supported by my reading of the '801 patent's specification. The specification discloses that a CSU/DSU can receive a signal that can correspond

to a video (4:20-24). That signal can be a synchronous digital signal (4:59-63). A CSU/DSU can connect to a digital network to receive that signal, which can correspond to a video (4:10-26). Those videos can be stored in video clip storage units according to subject matter (5:9-31, 6:41-51). And a CSU/DSU can retrieve those videos from video clip storage units, which can store the videos according to subject matter (7:10-13).

12. The patent's disclosure of the functionality of a CSU/DSU is consistent with the understanding of a CSU/DSU as it existed in the art at the time of the '801 patent's invention in 1993. Nothing about this disclosed functionality of a CSU/DSU was unpredictable or uncommon at that time.

13. A CSU/DSU is disclosed as an example embodiment of a "master communications unit" and a "communications unit". The minor difference in how they are recited is unimportant with respect to whether, from my perspective, they each are disclosed to include functionality consistent with my understanding of a CSU/DSU as it existed at the time of the '801 patent's invention. Notably, neither a "communications unit" nor a "master communications unit" is disclosed within the '801 patent's specification to have functionality inconsistent with my understanding of a CSU/DSU.

14. Accordingly, in part because the '801 patent's specification discloses an embodiment of a "master communications unit" to be a CSU/DSU, in part because the disclosed functionality of a CSU/DSU is consistent with my understanding of a CSU/DSU as it existed in the art at the time of the '801 patent's invention, and in part upon my further reading of the specification, it is my understanding that the "master communications unit" recited in claim 3 is adequately described to encompass a unit that can be coupled to a digital network to establish communications with that

network in order to receive a synchronous digital signal that corresponds to the data related to a particular subject matter stored in a video clip storage unit that stores data related to a particular subject matter.

15. The patent also contains additional disclosure that supports my conclusion. For instance, the specification discloses that the "master communications unit" can receive videos (col. 4:59-62). The Abstract states: "a master communications unit for establishing communications with the network in order to receive a synchronous digital signal." The Summary of the Invention states, at column 2, lines 33-37: "a master communications unit coupled to the digital network for establishing communications with the network in order to receive a synchronous digital signal from the network."

16. It is my understanding that the patent is directed to an invention for transmitting videos "to one or more locations anywhere in the world" (col. 1:17-18), not one for transmitting requests for videos to anywhere in the world. I am aware that the patent discloses that videos can be requested with a "command" signal, and I am aware that CSU/DSU **516** in FIG. 5 is described to receive that "command signal" (col. 7:5-10). However, claim 3 recites that the "synchronous digital signal" received by the "master communications unit" is a signal corresponding to data stored in the video clip storage units (col. 8:24-29). "Video clip storage units", as I understand that term to exist within the art as of the time of the '801 patent's invention, typically did not store user's requests for videos. Rather, they stored videos themselves. Therefore, it is my opinion that within the context of claim 3, the "master communications unit" does not receive a "synchronous digital signal" that encompasses non-video data, such as a request for a video "command" signal. My understanding is buttressed by two additional disclosures. First, claim 3

also recites a "menu storing unit" that contains information that enables a user to request video clips, rather than requests for video clips, from a particular video clip storage unit. Second, the patent's specification discloses that the synchronous digital signal itself corresponds to the video clip itself (col. 4:27-28; 5:29-31). Accordingly, it is my understanding upon reading the '801 patent's specification that the "synchronous digital signal" received by the "master communications unit" in claim 3 is not a "command" signal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11 day of August 2011 at San Francisco, California

*Randy H. Katz*
———————————————
Randy H. Katz

Locke Lord Bissell & Liddell LLP
44 Montgomery Street, Suite 2400
San Francisco, CA 94104