United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANS VIDEO ELECTRONICS, LTD., | No. C-09-3304 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING SONY'S MOTION FOR SUMMARY JUDGMENT** |
| SONY ELECTRONICS, INC., *et al.*, | |
| Defendants. | **(Docket No. 124)** |
| _____/ | |

Plaintiff Trans Video Electronics, Ltd. has filed suit against various Sony entities (collectively "Sony"), asserting a claim for infringement of one of its patents, more specifically, Patent No. 5,991,801 (the "'801 patent"). On May 18, 2011, Judge Patel issued a claim construction order in which she construed various terms contained in the only claim at issue, *i.e.*, claim 3. *See* Docket No. 119 (order). Based on that construction, Sony has now moved for summary judgment, asking that the invention claimed be deemed invalid for lack of a written description. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Sony's motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

The '801 patent relates to an information distribution system for a digital network. As stated in the patent:

> This invention relates generally to an apparatus . . . for transmitting digital information to locations throughout the world and in particular to a global digital news distribution system for transmitting digital news clips . . . simultaneously from one or more

>locations anywhere in the world to one or more locations anywhere in the world.

'801 Patent, col. 1:11-17.

As Judge Patel noted in her claim construction order, the specification for the '801 patent discloses two embodiments, represented by Figures 1B and 5, respectively.

**Figure 1B** shows a digital network having a digital information distribution system according to one embodiment of the invention. In Figure 1B, digital information such as a compressed video news clip is input to a master CSU/DSU (108). The master CSU/DSU (108) receives a synchronous digital data stream and outputs the synchronous digital signal to a distribution amplifier/equalizer (112). The distribution amplifier/equalizer (112) receives the signal, splits up the signal, and then outputs the split-up signals to a plurality of CSU/DSUs (116). These CSU/DSUs are coupled to a land network (170), which in turn is coupled to receiving stations (184). The distribution amplifier/equalizer (112) also has outputs to backup units (134, 136). *See* '801 Patent, col. 4:57-5:7; col. 5:39-57. Figure 1B reflects that one of the objects of the invention is "to provide an information distribution system which can disseminate information from one point to a plurality of receivers in a parallel fashion." '801 Patent, col. 2:61-64.

In **Figure 5**, an on-demand video news distribution system is described. On one end, a video menu unit (504) is coupled to a plurality of video clip storing units (525A-H), which are similar to the backup units (134, 136) in Figure 1B. Each video clip storing unit (525A-H) corresponds to a different news topic or subject matter. The video clip storing units are coupled to distribution amplifiers/equalizers (531A-H) (which are identical to the distribution amplifier/equalizer (112) in Figure 1B). The distribution amplifier/equalizers (531A-H) have multi-line outputs (533A-H) which are respectively coupled to CSU/DSU units (535A-H). The CSU/DSU units (535A-H) (which correspond to the plurality of CSU/DSUs (116) of Figure 1B) are all coupled to the network (520) (which corresponds to the land network (170) in Figure 1B). The network (520) in turn is coupled to computers (55A-C) used by users at television stations or at newspaper or magazine printing houses (550A-C). *See* '801 Patent, col. 6:39-65, Fig. 5.

1    On the other end, the video menu unit (504) referenced above is coupled to a telephone line
2 unit (508) (which corresponds to the distribution amplifier/equalizer (112) of Figure 1B). The
3 telephone line unit (508) has a plurality of output lines (514) which in turn are coupled to a plurality
4 of menu CSU/DSU units (516). The menu CSU/DSU units (516) are in turn coupled to the network
5 (520). *See* '801 Patent, col. 6:31-40.

6    Video news distribution in the above system described in Figure 5 operates as follows.
7 Users at television stations or at newspaper or magazine printing houses (550A-C) use their
8 computers (555A-C) to dial the telephone number of the video menu unit (504). The connected user
9 views a menu listing the various clips available on the video clip storing units (525A-H). If the user
10 wishes to obtain a particular clip, he or she enters a command to the video menu unit (504), which in
11 turn sends a "request-to-send" command to the appropriate video clip storing unit (525A-H). *See*
12 '801 Patent, col. 6:66-7:4-10. The video clip storing unit then sends the video clip to the user
13 (550A-C) via its corresponding distribution amplifier/equalizer (531A-H), via one of the
14 corresponding CSU/DSU units, which in turn is coupled to the network (520). *See* '801 Patent, col.
15 6:51-65, 7:10-13, Fig. 5.

16    While the '801 patent contains multiple claims, the only claim at issue in the instant case is
17 claim 3.[1] The specific invention claimed in claim 3 is as follows:

18    3.    An information distribution system for a network, comprising:

19        a plurality of video clip storage units that each store data related to a particular subject matter;

20        a **master communications unit** coupled to the digital network
21        that establishes communications with the network in order to receive a
         **synchronous digital signal** corresponding to the data related to said
22        particular subject matter stored in a respective one of said plurality of
         video clip storage units;

23        a plurality of distribution amplifier units coupled to said master
24        communications unit, wherein each of the plurality of distribution
         amplifier units has an input that receives **said synchronous digital
25        signal** corresponding to the data from a respective one of said plurality
         of video clip storage units and at least one output that divides **said
26        synchronous digital signal** corresponding to the data from said

---

[1] On September 30, 2011, Trans Video filed a motion to amend to add a new claim (claim 4) to the lawsuit. *See* Docket No. 136 (motion).

3

>    respective one of said plurality of video clip units into a plurality of synchronous signals;
>
>    a plurality of communications units, each of said communications units being coupled to one of said plurality of distribution amplifier units to respectively establish communications between respective ones of said plurality of distribution amplifier units and a plurality of receiving stations in the digital network to receive and output corresponding ones of said plurality of synchronous signals to the plurality of receiving stations;
>
>    a master controller unit coupled to said plurality of communications units to control said plurality of communications units from a central location; and
>
>    a menu storing unit accessible from the digital network that stores information indicating the subject matter associated with each of said plurality of video clip storage units and information as to how to access each of said video clip storage units.

'801 patent, col. 8:19-55 (emphasis added).

As indicated by the language bolded above, claim 3 requires that the master communications unit receive a synchronous digital signal and then relay that *same* signal to the digital amplifier units. In turn, each digital amplifier unit splits up that *same* signal into a plurality of synchronous signals. At the hearing on the instant motion, both parties agreed that the term "said" as used to describe the synchronous digital signal means the "same."

In her claim construction order, Judge Patel indicated that, in Figure 1B, the master communications unit is the CSU/DSU (108). *See* Docket No. 119 (Order at 8) (discussing the embodiment disclosed in Figure 1B). As for Figure 5, she concluded that the master communications unit is a menu CSU/DSU unit (516).[2] *See* Docket No. 119 (Order at 8) (discussing the embodiment disclosed in Figure 5).

///

///

///

---

[2] In an endnote, Judge Patel acknowledged that the parties had a dispute over whether Figure 5 discloses a master communications unit. However, she deemed the menu CSU/DSU units to be master communications units because "the description of the menu CSU/DSUs (516) in Figure 5 hews closely to the 'master communications unit' claim language in Claim 3; namely, both units receive a signal from the network corresponding to video clips stored in the video clip storage units." Docket No. 119 (Order at 25 n.1).

4

## II. DISCUSSION

A. Legal Standard

Sony has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), arguing that, based on Judge Patel's claim construction order, there is no genuine dispute of material fact that the '801 patent is invalid because it fails to provide a written description for the invention claimed in claim 3.

Under Rule 56, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

In the instant case, Sony's claim of invalidity based on lack of a written description is an affirmative defense for which it has the burden of proof – in fact, a heightened burden of proof of clear and convincing evidence. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009) (stating that, because "an issued patent comes with a statutory presumption of validity under 35 U.S.C. § 282 . . . , an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence"). Where a defendant moves for summary judgment based on an affirmative defense for which it has the burden of proof, the defendant "must establish beyond peradventure all of the essential elements of the . . . defense to warrant judgment in [its] favor." *Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (internal quotation marks omitted; emphasis in original); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (noting that a defendant bears the burden of proof at summary judgment with respect to an affirmative defense).

B.   Written Description

As noted above, Sony's invalidity argument is based on a lack of written description. The written description requirement is found in the first paragraph of § 112 of the Patent Act. It provides in relevant part as follows:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . .

35 U.S.C. § 112.

The Federal Circuit has:

> interpreted that section as requiring a written description of an invention separate from enablement.
>
> In order to satisfy the written description requirement, the disclosure as originally filed does not have to provide in haec verba support for the claimed subject matter at issue. Nonetheless, the disclosure of the prior application must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession of the invention.

*Yingbin-Nature (Guangdong) Wood Indus. Co. v. ITC*, 535 F.3d 1322, 1334-35 (Fed. Cir. 2008) (internal quotation mars omitted). That is,

> [t]he written description requirement requires the inventor to disclose the claimed invention so as to allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed. Requiring a written description of the invention limits patent protection to those who actually perform the difficult work of invention – that is, conceive of and complete the final invention. The written description requirement exists to ensure that inventors do not attempt to preempt the future before it has arrived.

*Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1036 (Fed. Cir. 2011) (internal quotation marks omitted); *see also Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011) (stating that "[t]he purpose of the written description requirement 'is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification'").

Importantly, for purposes of the written description requirement, "[o]ne shows that one is 'in possession' of the invention by describing the invention, with all its claimed limitations, not that which makes it obvious." *Lockwood v. American Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). The Federal Circuit has emphasized that

> [t]he question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.

*Id.*

Because the written description requirement takes into account the perspective of a person of ordinary skill in the art, the Federal Circuit has noted that "[the] inquiry [regarding written description] is a factual one and must be assessed on a case-by-case basis." *Yingbin-Nature (Guangdong) Wood Indus. Co.*, 535 F.3d at 1335; *see also Katz Interactive*, 639 F.3d at 1318-19 (noting that "[w]ritten description is a factual inquiry" and that "'[t]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art'").

However, a written description decision can turn simply on a claim construction. *See id.* at 1319-20 (in upholding summary judgment of invalidity based on lack of written description, rejecting the patent holder's "contention that the district court's claim constructions denied it the opportunity to demonstrate specification support or proffer expert testimony [as] [i]t should have been clear to Katz that the construction of the claims was important to the written description analysis"); *University of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (noting that, "although compliance with the written description requirement is a question of fact, [the patent holder's] argument that a patent may not be held invalid on its face is contrary to our case law"; citing a prior holding that "a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification" because, "[a]fter all, it is in the patent specification where the written description requirement must be met"); *cf. Harari*, 2011 U.S. App. LEXIS 18210, at *30 (stating that "[t]his written description decision turned almost entirely on the claim construction").

C.    Figure 5

In its motion, Sony argued that there is a lack of written description for the invention claimed in claim 3 because, based on the specification, the only possible description for the invention is Figure 5 and it does not include a description of the synchronous digital signal – a command signal, and not video – being split up into a plurality of synchronous signals. *See, e.g.*, Mot. at 12. At the hearing on the motion, Sony expanded on this argument, noting that Figure 5 cannot describe the invention claimed in claim 3 because claim 3 requires that the *same* synchronous digital signal be received by the master communications unit and passed on to the distribution amplifier units but Figure 5 describes a command signal (*i.e.*, not video) being received by the master communications unit (516) and a video clip being sent on to the distribution amplifier units (531A-H).

The Court finds both arguments persuasive. As a preliminary matter, it agrees with Sony that Figure 5, and not Figure 1B, contains the critical description in the specification. Figure 1B cannot provide the written description because, *e.g.*, it does not contain anything that would constitute a menu storing unit or a video clip storing unit, both of which are elements of claim 3. Figure 1B does have backup units (134, 136), but the specification does not deem them the same or identical to the video clip storing units. *See* '801 Patent, col. 6:41-43 (noting that "[v]ideo news distribution system 500 includes a plurality of units 525A-525H *similar* to backup units 134 or 136 of FIG. 1B") (emphasis added). *Compare* '801 Patent, col. 54-56 (stating that "[d]istribution amplifer/equalizers 531A-531H are *identical* to distribution amplifier/equalizer 112 previously discussed") (emphasis added).

With respect to claim 3, the Court also agrees with Sony that the language of the claim makes clear that a master communications unit must receive a synchronous digital signal and then passes that *same* signal ("said . . . signal") to the distribution amplifier units, each of which in turn divides the *same* signal ("said . . . signal") into a plurality of synchronous signals. *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2000) (stating that "a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent").

8

The Court further agrees with Sony that Figure 5 does not describe the invention claimed in claim 3. Per the specification, in Figure 5, a video menu unit (504) receives a command (*i.e.*, not video) from a user (550A-C). Because Judge Patel concluded that the menu CSU/DSU units (516) are the master communications units, and because the menu CSU/DSU units (516) connect the video menu unit (504) and the user (550A-C) (through the network (520)), the menu CSU/DSUs (516) must also receive that same command (*i.e.*, not video) from the user (which it then passes on to the video menu unit (504)). Therefore, as described, in Figure 5, the synchronous digital signal that is received by the master communications unit (516) is a command (and not video). The problem for Trans Video is that there is nothing in the specification in Figure 5 that describes that command then being split into a plurality of signals, as claim 3 specifies. Furthermore, the specification talks about the distribution amplifier/equalizers (531A-H) receiving and sending out a video clip (and not a command). *See* '801 Patent, col. 7:10-13 (stating that "[t]he video storing unit with that video clip or photograph then sends the video clip (photograph) via its corresponding distribution amplifier/equalizers 531A-531H via one of its corresponding CSU/DSU units 535A-535H"). But claim 3 requires that the *same* synchronous digital signal be received by the master communications unit and then passed on to the distribution amplifier units. In Figure 5, a *command* is received by the master communications unit (516) but then the distribution amplifier/equalizers (531A-H) receive a *video clip*.[3]

Indeed, at the hearing, Trans Video admitted that neither Figure 1B nor Figure 5 alone describes the invention claimed in claim 3. Although during the claim construction hearing before Judge Patel, Trans Video had argued that "FIG. 5 contains all the elements recited in claim 3," Docket No. 114 (Reply at 6), Trans Video now takes the position that a person of ordinary skill in the art would have combined elements from Figure 1B and elements from Figure 5 to arrive at the invention claimed in claim 3. Trans Video pointed out, for example, that, in Figure 1B, the master

---

[3] To the extent Trans Video points out that the telephone line unit (508) also corresponds to a distribution amplifier/equalizer, *see* '801 Patent, col. 6:34-35 (stating that the telephone line unit (508) corresponds to the distribution amplifier/equalizer (112) in Figure 1B), then the synchronous digital signal received by the master communications unit (516) and passed on to the telephone line unit (508) would be the same – *i.e.*, a command, and not a video. However, there is still never any splitting of that signal (the command) into a plurality of signals.

9

communications unit (108) does receive video (instead of a command signal). *See* '801 Patent, col. 4:59-60 (stating that "[t]he compressed video news clip is input to master CSU/DSU 108"). Thus, according to Trans Video, a person of ordinary skill in the art would have taken the master communications unit (108) from Figure 1B with the remaining elements in Figure 5 to arrive at the invention claimed in claim 3. As another example, Trans Video argued that a person of ordinary skill in the art would have incorporated the video clip storing units (and implicitly the video menu unit) from Figure 5 into the embodiment in Figure 1B to come up with the invention claimed in claim 3.

Trans Video's argument, however, runs counter to Federal Circuit case law. In evaluating whether the written description requirement has been satisfied, a court does not simply look to see whether the specification contains descriptions of the individual elements of the claim. Rather, a court must look to see whether there is a written description for the entirety of the claimed invention – *i.e.*, the *combination* of elements. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (stating that "[a]n applicant complies with the written description requirement 'by describing the invention, with *all* its claimed limitations'") (emphasis added); *Hyatt v. Dudas*, 492 F.3d 1365, 1371 (Fed. Cir. 2007) (upholding the patent examiner's initial rejection in which the examiner found failure to satisfy the written description requirement because "the written description did not support the particular claimed *combination* of elements – *i.e.*, "while each element may be *individually* described in the specification, the deficiency was the lack of adequate description of their *combination*") (emphasis in original).

Trans Video's contention that a person of ordinary skill in the art would have understood that elements of Figures 1B and 5 could be combined is essentially an argument of obviousness. But as noted above, the Federal Circuit has specifically stated that, for purposes of the written description requirement,

> [o]ne shows that one is "in possession" of the invention by describing the invention, with all its claimed limitations, not that which makes it obvious. One does that by such descriptive means as words, structures, figures, diagrams, formulas, etc., that *fully set forth* the claimed invention. Although the exact terms need not be used in haec verba, the specification must contain an equivalent description of the

10

>claimed subject matter.  A description which renders obvious the invention . . . is not sufficient.

*Lockwood*, 107 F.3d at 1572 (emphasis added and omitted).  The written description requirement thus differs from the question of obviousness.  *Cf. Boston Sci. Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 991 (Fed. Cir. 2009) (finding invention claimed invalid based on prior art;  holding that a person of ordinary skill in the art would have been motivated to combine two figures/embodiments in a prior patent to arrive at the invention claimed, thus rendering the invention obvious).

     The authorities cited by Trans Video is not to the contrary.  These cases merely note that "a claim need not be limited to a preferred embodiment," *Lampi Corp. v. Am. Power Prods.*, 228 F.3d 1365, 1378 (Fed. Cir. 2000) embodiment"); *see also Rexnord*, 274 F.3d at 1344 (noting that "an applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention"; adding that, "'[i]f structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims"); *Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) (stating that, "if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims"), and that "a patent claim is not necessarily invalid for lack of written description just because it is broader than the specific examples disclosed." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1371 (Fed. Cir. 2009).  The Court does not take issue with these general principles.  But these cases fail to address the specific issue here – *i.e.*, whether the written description requirement may be met where the combination of elements comprising the invention is not described at all and instead requires a person of ordinary skill in the art to synthesize elements from different embodiments to come up with the claimed invention.  Trans Video has failed to point to any authority to support its position.  In the absence of any such authority, the Court concludes that *Lockwood* is controlling – *i.e.*, the written description requirement is not satisfied here because, in the end, Trans Video's position is the "claimed invention is an obvious variant of that which is disclosed in the specification." *Lockwood*, 107 F.3d at 1572.

11

1    Finally, the Katz declaration that Trans Video has submitted in support of its opposition does
2 not alter the Court's conclusion.  According to Trans Video, at the very least, summary judgment is
3 inappropriate because written description is a factual inquiry and it has raised a genuine dispute of
4 material fact by submitting a declaration from an expert (Randy H. Katz).  But, as discussed above, a
5 written description decision can turn simply on a claim construction.  Here, Dr. Katz's opinion
6 essentially contradicts Judge Patel's claim construction.  Most notably, in paragraph 16 of his
7 declaration, he states:

> I am aware that CSU/DSU 516 in FIG. 5 is described to receive [a] "command signal."  However, claim 3 recites that the "synchronous digital signal" received by the "master communications unit" is a signal corresponding to data stored in the video clip storage units. "Video clip storage units," as I understand that term to exist within the art as of the time of the '801 patent's invention, typically did not store user's requests for video.  Rather, they stored videos themselves. Therefore, it is my opinion that within the context of claim 3, the "master communications unit" does not receive a "synchronous digital signal" that encompasses non-video data, such as a request for a video "command signal."

14 Katz Decl. ¶ 16.  The problem is that, under Dr. Katz's opinion, menu CSU/DSU units (516) are *not*
15 master communications units as the term is used in claim 3, but Judge Patel expressly found in her
16 claim construction order that menu CSU/DSU units (516) *are* master communications units.  Trans
17 Video did not move for reconsideration of Judge Patel's claim construction.  This Court affirms
18 Judge Patel's claim construction order.
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### III. CONCLUSION

For the foregoing reasons, the Court grants Sony's motion for summary judgment.

Although this motion resolves the only claim at issue in the case, the Court shall defer entry of judgment in accordance with this opinion because Trans Video has now filed a motion to amend, seeking to add a new claim of patent infringement to the case.

This order disposes of Docket No. 124.

IT IS SO ORDERED.

Dated: October 14, 2011

_____
EDWARD M. CHEN
United States District Judge