Pages 1 - 14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

| | |
|---|---|
| TRANS VIDEO ELECTRONICS, LTD., )<br>     )<br>          Plaintiff,        )<br>     )<br>  VS.                          )<br>     )<br>SONY CORPORATION OF AMERICA, et )<br>al,                            )<br>     )<br>          Defendants.          )<br>_____) | NO. C 09-3304 EMC<br><br>San Francisco, California<br> Monday<br> November 7, 2011<br> 1:30 p.m. |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**:          Locke Lord, LLP
                           Three World Financial Center
                           21st Floor
                           New York, New York 10281
                    BY:  **JOHN SWEENEY, ESQ.**

**For Defendants:**         Kenyon & Kenyon
                           One Broadway
                           New York, New York 10004
                    BY:  **WALTER HANLEY, ESQ.**

*Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR*
          *Official Reporter - US District Court*
          *Computerized Transcription By Eclipse*

### P R O C E E D I N G S

NOVEMBER 7, 2011                                        1:55 p.m.


THE CLERK:  Calling case C 09-3304, Trans Video versus Sony.

Counsel, please come to the podium and state your appearance for the record.

MR. SWEENEY:  Good afternoon, your Honor.  John Sweeney, Locke Lord for Trans Video.

THE COURT:  All right.  Thank you, Mr. Sweeney.

MR. HANLEY:  Good afternoon, your Honor.  Walter Hanley of Kenyon and Kenyon for the Sony defendants.

THE COURT:  All right.  Thank you, Mr. Hanley.

Tell me why, Mr. Sweeney, this -- the timing of this really looks like there was a strategic or tactical decision made, almost admittedly so, for not including Claim Four earlier in the case and why Trans Video should not be bound by that, its tactical decision?

MR. SWEENEY:  Well, we argued the video uploading construction.  And Claim Three was consistent with that construction.  There was a good basis for that construction we thought.  It was argued in the prosecution history by the solicitor.  Judge Patel held it didn't apply to Claim Three, but to other claims.

We also argued that construction in opposing Sony's

motion to stay the case and we received an adverse ruling.

And had we presented Claim Four earlier, we would have been at odds with ourselves in arguing the construction that we argued.  So we couldn't consistently argue both.

And when we got the adverse construction, Judge Patel retired.  A few months went by.  We gave the Court notice that we wanted to add this claim.

Now, the -- we don't think there is any possible prejudice to Sony.  The trial has been set more than a year away.  Fact discovery hasn't -- the cutoff hasn't been set.  It's probably a year away as well.  Sony went to great lengths to challenge the validity of Claim Four in the Patent Office, presented its approach as to why it's invalid.  So we don't really think there is any prejudice --

THE COURT:  Let me back up for a second.  Why couldn't one plead in the alternative?

MR. SWEENEY:  Well, I think it goes -- that would go to our credibility.  And we were arguing that this invention had to do with video uploading based upon statements, explicit statements made in the prosecution history.  Those arguments appeared to relate to Claim Four as well as Claim Three.

And I think it would have compromised and undermined our position in the *Markman* claim construction argument.  We can't argue two different things that are inconsistent credibly in a *Markman* hearing.

**THE COURT:** What's your response? Isn't that a fair example?

**MR. HANLEY:** Well, I've struggled well, your Honor, with the logic of their argument, but the way -- it seems to me that they made a judgment early on that their best case lie in relying on Claim Three.

And what Mr. Sweeney seems to be saying is that their construction position had a flaw in it in that the prosecution history arguments, which they urged apply to all claims, didn't seem to be reflected in Claim four and, therefore, asserting Claim Four would have undermined their position that the prosecution history required video uploading.

So essentially saying, we took the position which we noticed had some flaw in it and, lo and behold, Judge Patel found their position was flawed and rejected it. They must have decided that Claim Three was their best shot and they should be held to that decision.

**THE COURT:** Why doesn't that -- the very fact of that inconsistency could be turned, as counsel has, that -- I don't know if it's -- not unclean hands, but, I mean, he suggests that you take a position and you have to live with that position.

**MR. SWEENEY:** Your Honor, we tried to narrow -- we could have contended that all the claims were infringed, all 28. We tried to narrow the claim to make this a manageable

case in good faith and we argued our claim construction.  We lost.  We did not anticipate losing.  I think we had a good faith basis to make that argument.

There is absolutely no prejudice to Sony.  There is -- Claim Four is almost identical to Claim Three.  The same claim terms are there.  Sony has pointed out maybe two additional claim terms.  There is no showing that they are particularly controversial.  There are -- no expert reports have been filed.  No cutoffs of discovery.  There is absolutely no prejudice --

**THE COURT:**  Before we even get to prejudice, there is a question of whether diligence was exercised.  Local Rule 3-6 requires a degree of diligence.  Rule 15 requires some degree of diligence.  And even if prejudice is required under Rule 15, in addition to lack of diligence, why isn't that really bad faith?  I mean, to withhold this claim until it appeared that the writing was on the wall.  The summary judgment had been, I think, partially briefed or almost completely briefed.  The claim construction was already at that point four months old or several months old.

Why doesn't this look like, you know, waiting until the very last minute and -- before you go over the cliff deciding, well, let's put on the brakes.  Let's turn left here.

**MR. SWEENEY:**  Your Honor, one year of the case passed, you know, during the reexamination and we opposed the

stay. We did not want the case to stay. We wanted it to go forward.

It was Sony that basically imposed that delay on the case. And we did notify the Court within about three months of the adverse claim construction. We didn't haul off and just make a motion, as you know. We presented it to Sony. They objected in the case management conference statement. We asked the Court permission to make this motion when we were here a couple months ago.

I think we acted in very good faith and without hauling off and making this motion. We did not have an assigned judge this summer. I did not think it was appropriate to make motion of this type during that period. And I did want to ask permission in the case management conference to do that.

So 3-6 does say -- and I think your Honor has actually a case dealing with it, the *Sun Power Corporation Systems* case, that, you know, an adverse *Markman* ruling is a correct basis for amending infringement contentions, particularly as here, where did not anticipate -- you cannot say that we anticipated this adverse ruling. We had argued it, and it was in good faith. It was supported by portions of the prosecution history.

**THE COURT:** The claim construction ruling was issued by Judge Patel in May.

**MR. SWEENEY:** Yes.

THE COURT:  And why didn't -- you know, right then and there you had a chance to --

MR. SWEENEY:  She immediately retired and we didn't have an assigned judge for over a month.  So I think that is a pretty good answer there.  And we did not anticipate the adverse ruling.

3-6 would have -- you know, if we had -- if we had made this motion, you know, six months ago, we couldn't rely on 3-6.  We couldn't say there was a basis for -- you know, there's an adverse *Markman* ruling.  We had to establish the predicate under 3-6 before making the motion.

And three months is not a long time.  There was nothing going on in the case over the summer during that period anyway.  And now we have more than a year and a half before us where nothing is occurring.

And on the other hand, the prejudice to, you know, the motion -- if this motion is not granted is fatal to Trans Video and I think that kind of Draconian result is certainly not what justice requires.

THE COURT:  Would res judicata apply?

MR. SWEENEY:  Yes, it would I think, your Honor.

THE COURT:  What's the prejudice?  I mean, I understand there is a prejudice of now having to defend a case, a new claim on the verge of otherwise dismissal.  But usually prejudice is -- for Rule 15 purposes, the prejudice that

results from the delay.

In other words, if somebody adds a new claim, there is always prejudice because now you have a new set of allegations.  You have more depositions.  But usually the issue is what prejudice obtains as a result of the delay that makes you unable to prepare for trial or you can't discover now because discovery is closed?  What's the prejudice from the delay that is -- had they not -- had they asserted this claim a year ago compared to today, what's the difference?

MR. HANLEY:  Well, I think we went through a *Markman* process and got the result of that and then in good faith sought to terminate the case on a motion for summary judgment. And had they -- had they asserted the Claim Four earlier, we could have -- we could have adjusted our strategy to -- directed to Claim Four.  We could have adjusted our claim construction positions to take into account Claim Four, and we could have adjusted our approach toward attempting to arrive at summary judgment in the case with Claim Four in mind.  We played the game by the rules.

THE COURT:  I understand that.

MR. HANLEY:  They asserted a claim.  We went through the *Markman* process on that claim.  We took our claim construction positions.  We argued them.  We obtained the result.

We believe that based on the *Markman* ruling, the case

could be disposed of on summary judgment and we brought our motion.  And we are prejudiced in that we should get the benefit of having played the game the right way and arrived at a point where judgment should be granted in Sony's favor.

**THE COURT:**  Is there something you can point to as to how your claim construction arguments would have been framed differently or how your MSJ approach would have differed had there been Claim Four nine months ago?

**MR. HANLEY:**  Your Honor, we hadn't thought about all the metes and bounds of Claim Four and the constructions that -- the positions that would be taken on and how they would interrelate to Claim Three.

But the fact of the matter is, we would have been able to take that into account.  And we went down the road and came to the end of the road and now the case -- the case should be over and they are now asking for a do-over.

I mean, this is unlike most situations where the Court is examining, what is the incremental burden of adding a new count to the claim or adding a claim to the case in this instance, where you're going to be proceeding down the road to a trial, how much additional activity would be required and, you know, how -- how was the defendant additionally burdened.

This is a digital situation.  If the Court allows the amendment, we would have to litigate the case.  If the Court does not, the case is over.

And mere prejudice really isn't relevant.  In point of fact, they have created this situation by their strategic choice.  But even so, their prejudice isn't relevant to the inquiry.

THE COURT:  What's your best argument as to why this is not only lack of diligence, but also bad faith?

MR. HANLEY:  Well, I think if you look at -- if you accept their excuse -- and I certainly don't accept their excuse -- that the *Markman* ruling is the reason for, or is the impetus for this amendment, but if you just take that for a moment, it's not just the passage of four months before they alerted us that they were going to seek to add Claim Four. It's -- it's what happened during those four months that would have led a reasonably diligent party to have spoken up.

And what happened was, your Honor issued a reassignment order in early June and invited the parties to submit a joint case management statement and to indicate to your Honor whether or not an immediate case management conference was needed.

So we participated with them in preparing that, that statement.  In that statement it said Claim Three is the only asserted claim.  And we alerted the Court to the fact that based on the *Markman* ruling, we were going to bring a motion for summary judgment in July of invalidity of Claim Three.

Now, if they have in mind because of the *Markman*

ruling that they should be asserting another claim, that would have been the juncture to bring it up. We're saying, we're going to bring a motion to dispose of the case. And a reasonably diligent party would say, "Oh, wait a minute. This won't be dispositive because we're going to seek leave to amend to add another claim." But they didn't do that.

So we brought our motion at the end of July and they responded on August the 12th. And in their brief they made a point of saying Claim Three is the only asserted claim.

So they are not bringing up the fact that they have in mind amending, seeking to amend that Claim Four. They are making a point of saying that Claim Three is the only asserted claim by way, I guess, of suggesting if your Honor grants summary judgment against them, the case will be over.

Then we -- we completed briefing by submitting our reply brief. Still no answer from them. Still no raising Claim Four. Only when we got to the point where we're about 10 days before the hearing on the motion and the parties are preparing a joint claim construction statement for the claim -- for the case management conference to be held on that same day, did they bring this up.

So the fact pattern doesn't suggest that the impetus for this motion was the *Markman* ruling which had happened four months earlier. The fact pattern suggests if they are looking at the full briefing on the motion for summary judgment and

realizing that their case is in peril and they are acting in reaction to that to try to save it by adding a claim to the case.

Well, we cited numerous cases that say that amendments are not -- the amendment process is not intended to alleviate the likelihood that the case is going to be resolved against the moving party on a motion for summary judgment. That seems to me exactly what's happening here.

THE COURT:  All right.  Well, how do you explain then this timing?

MR. SWEENEY:  First of all, your Honor, the timing we're talking about is not a year.  We're talking about three or four months at the tops.

THE COURT:  I understand the length of the timing.

MR. SWEENEY:  It's a very short amount of timing.

THE COURT:  But the allegation here is this is really a manipulative attempt to avoid dismissal rather than an earnest response deriven by the *Markman* ruling.  The sequence -- I don't even care about the days and weeks, it's the sequence.

MR. SWEENEY:  Well, your Honor, there's a strong relationship with that *Markman* ruling and the motion for summary judgment that Sony brought.  They were based -- you know, the motion for summary judgment was related to the adverse claim construction that we got.  And that is true.

But the fact that there was a motion for summary judgment pending, you know, was an implication of a claim construction, and that doesn't take away from the fact that we had an adverse claim construction and the local rule permits us -- that's a justification to do this.  We're talking about a delay of three possibly four months, a very short delay.  And there is no prejudice associated with it.

So I think it was in very good faith.  The whole business of what an adverse claim construction means is that it's adverse.  It's potentially damaging.  And that's what Local Rule 3-6, when it was amended, contemplates; that if you get an adverse ruling, that enables you to amend the contentions, assuming there is no prejudice to the other side.

And the only prejudice the other side is talking about here is just going forward with the case.  They don't have to redo expert reports or redo discovery or redo anything.

THE COURT:  Would you agree that the case law is such that if -- if bad faith is found as opposed to mere lack of diligence, that prejudice need not be -- is not a necessary component?

MR. SWEENEY:  We do not -- look, your Honor, I was not in bad faith in any way.

THE COURT:  I understand you don't agree with that.  I'm saying as a legal proposition is --

MR. SWEENEY:  I think bad faith can be considered

along with the totality of everything else, but I think there is no bad faith here.

I have been practicing for 35 years.  I have never done anything in bad faith in my life.  And this claim construction was adverse.  And the fact that, you know, Sony relied upon it in their motion for summary judgment doesn't make what we did, you know, bad faith.

We had a right, whether they made this motion or not, to react to this adverse a claim construction and we did it promptly.  We did it in three months.  It was tabled.  And the very first time we saw you, your very first case management conference.  And I think it would be Draconian justice to make this a penal situation against us on a motion to amend.

And under Rule 15 I think justice does require that the amendment be granted and we deal with the issue on its merits.

THE COURT:  All right.  I will take the matter under submission.  I understand your positions.  Thank you.

(Whereupon, further proceedings in the

above matter were adjourned.)


--oo--

## CERTIFICATE OF REPORTER

I, DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 09-3304 EMC, TRANS VIDEO ELECTRONICS vs SONY, et al were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

/s/ Debra L. Pas

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Tuesday, January 31, 2012

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*